## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

**RALPH BRADBURY**                                        **PLAINTIFF**

v.                              **No. 4:11-cv-810-DPM**

**UNITED STATES OF AMERICA**                      **DEFENDANT**

### ORDER

**1. Summary.** Every employer must withhold income, Social Security,
and Medicare taxes from its employees' wages, hold the money in trust, and
then pay it periodically to the United States. 26 U.S.C. §§ 3102(a), 3402(a),
7501. The demise of Continental Express, Inc., a trucking company, and its
sister entity, Arkansas Trucking, Inc., has resulted in questions about who's
responsible for some withheld but unremitted payroll taxes. The United
States wants Ralph Bradbury, Continental's former president, to pay the taxes.
It says he was responsible for making sure the withholdings were paid over
to the government and willfully failed to do so. 26 U.S.C. § 6672(a). The IRS
assessed the amount owed, which the statute calls a penalty, against
Bradbury. After the IRS withheld some tax refunds otherwise due him,
Bradbury filed this case to recover the refunds and abate the penalty. The
United States has counterclaimed to reduce the assessment to judgment.

Bradbury argues that he did the best he could as Continental and Arkansas Trucking failed around him. He says Bonnie Harvey, one of Continental's owners, promised repeatedly to recapitalize the company, but never did. He also says she and her consultant, Marvin Jones, told him these taxes would be paid. He contends that, by the third quarter of 2008, Harvey and Jones were as much, or more, in control of the plight of Continental/Arkansas Trucking as he was. He points out that lots of other creditors got paid in the sale and business wind up — while he was, he says, left hanging on the clothesline about these payroll taxes.

The United States argues that these surrounding circumstances are immaterial: because Bradbury was a responsible person during the third quarter; and because he knew other bills were being paid then, but the withholdings were not, his actions were willful within the statute's meaning. Therefore, argues the Government, Bradbury must satisfy this obligation now.

The parties have filed cross motions for summary judgment. Many of the material facts are undisputed. Where there is some dispute, the Court will take the facts in the light most favorable to Bradbury on the Government's motion and vice versa. *Breitkreutz v. Cambrex Charles City, Inc.*, 450 F.3d 780,

-2-

781 (8th Cir. 2006).   The United States' motion is mostly granted and Bradbury's motion is denied.

**2. The Facts**.  Arkansas Trucking "leased" employees exclusively to Continental.  *№ 76 at* ¶ 4; *№ 65 at* ¶ 14.  There was no daylight between the two companies.   Arkansas Trucking maintained no separate office or corporate leadership.  *№ 76 at* ¶ 11–12.  Ed Harvey was the president on paper.  *№ 65 at* ¶ 13.  Arkansas Trucking had no assets of its own and relied on money from Continental to pay for everything, including employee salaries and its tax obligations.  *№ 76 at* ¶ 13–14.  Arkansas Trucking's bank accounts were funded by Continental's operating account.  *№ 76 at* ¶ 23.

While experiencing financial difficulties in the third quarter of 2008, Arkansas Trucking failed to make federal employment tax deposits on its employees' wages.  *№ 76 at* ¶¶ 142, 146, 156-58, 174, 179, 211-12.  It made payments to other creditors during this period.  *№ 76 at* ¶ 205.

Ed and Bonnie Harvey were the sole shareholders of Continental; he was the sole shareholder of Arkansas Trucking.  *№ 65 at* ¶¶ 12-13.  During the summer of 2008, Bonnie Harvey hired Marvin Jones to serve as a consultant.  *№ 65 at* ¶ 31.  The parties dispute the reasons why Jones was hired and the

extent of his control over Continental's finances and future. *№ 65 at* ¶ 31–32. In July 2008, Continental changed CFOs. *№ 76 at* ¶ 143.

Bradbury exercised authority at both Continental and Arkansas Trucking during the third quarter of 2008. At Continental, he served as president and was a member of Continental's board of directors. *№ 76 at* ¶¶ 1–2. All of the managers at Continental ultimately reported to him. *№ 76 at* ¶ 38. Bradbury managed day-to-day operations and had the authority to hire and fire employees. *№ 76 at* ¶¶ 39–40. He had the authority to sign checks from all three Continental bank accounts and to authorize his staff to make payments from the accounts. *№ 76 at* ¶¶ 32–33. He never initiated checks; he relied on his management team to put them on his desk for review and signature. *№ 50-19 at pp. 39–41* (examination pagination)[1]; *№ 50-20 at pp. 115–17* (deposition pagination). Bradbury also had the authority to bind Continental to contracts with major suppliers. *№ 76 at* ¶ 42.

---

[1] *№ 50-19* is a transcript of Bradbury's sworn examination by the United States' counsel. All page citations use the examination's pagination. *№ 50-20* is a transcript of Bradbury's deposition. All page citations use the deposition's pagination.

At Arkansas Trucking, Bradbury was responsible for opening the company's three bank accounts and authorizing payments from those accounts. *№ 76 at* ¶¶ 27, 30–32. He had the authority to sign checks and had some control over who had signature authority. *№ 76 at* ¶¶ 28–29, 152. Bradbury's salary came from Arkansas Trucking. *№ 76 at* ¶ 60.

Bradbury also possessed significant authority in tax matters involving Arkansas Trucking and Continental. He had the authority to require his staff to report to him when federal employment taxes became due. *№ 76 at* ¶¶ 98, 141. He also had the authority to instruct his staff to ensure that federal employment taxes were paid before any other creditor. *№ 76 at* ¶¶ 184, 213. When Arkansas Trucking failed to meet its employment tax obligations in July 2008, the revenue officer was sent to Bradbury. *№ 76 at* ¶ 131–32. This was Bradbury's first direct involvement with tax issues. *№ 50-19 at 69.* He took responsibility for getting this tax obligation paid, approving his staff's idea to use Continental's American Express card to pay the IRS immediately. *Ibid; № 76 at* ¶¶ 133–34.

In early September 2008, Bradbury again received notice of Arkansas Trucking's failure to pay its federal employment taxes. *№ 76 at* ¶ 185. He

ordered his staff to keep him informed of any future federal employment tax deposits. № *76 at* ¶ 190. He told them, "this can't continue." № *76 at* ¶ 191. When his staff told him that the delinquency had to be paid by early November, Bradbury instructed them to pay. "I said, boys, that's what you got to do, so make sure it happens." № *50-19 at p. 70.*

The parties dispute what else happened after Bradbury discovered the unpaid third quarter taxes. Here is Bradbury's version. He says he told Bonnie Harvey and Marvin Jones in early September about the delinquency — he "went over there with [his] hat in [his] hand and begged for money." № *65 at* ¶ 33; № *50-19 at pp. 82–83.* Harvey and Jones told him they "would see what they could do about getting some cash into the company." № *50-19 at p. 79.* Thereafter, Jones took over check-signing authority and the priority of payments. № *62-1 at 8;* № *50-19 at pp. 85–87.* Bradbury had to get prior approval before he could sign any significant check. № *62-1 at 7.* And starting in October, all the checks Bradbury signed went to Jones's basket for approval; no check was released without Jones's OK. № *50-19 at pp. 85–87, 100–01.* Bradbury reminded Jones on a daily basis that the delinquent taxes had to be paid by 5 November 2008. № *62-1 at 8;* № *50-19 at p. 96.* Jones and

Harvey repeatedly assured Bradbury that they would be paid, but they never were. № 65 at ¶¶ 34. Jones also told Bradbury that he (Jones) had contacted the IRS and handled everything directly with the Service. № 50-19 at pp. 95, 97. At this point, Bradbury says his only alternative was an unrealistic one: sneaking a check out of the checkbook and writing it to the IRS, not knowing what the cash flow would be. № 50-19 at pp. 97, 106.

The United States says Harvey and Jones found out about the taxes in October or early November. № 65 at ¶ 33. It disputes that Harvey or Jones assured Bradbury the taxes would be paid or did anything to prevent payment. № 65 at ¶¶ 33–35. The Government says neither Jones nor Harvey had check-signing authority and that Bradbury retained this authority and continued to sign checks to other creditors through December 2008. № 65 at 21. The United States emphasizes that the bank records show that Jones didn't have check-signing authority until December 2008, and that neither of the Harveys had check-signing authority on Continental/Arkansas Trucking accounts. №s 50-3, 50-4, 50-9, 50-10, & 50-11.

Bonnie Harvey sold Continental on 4 December 2008 — the day before the IRS was to issue its thirty-day letter giving notice that it would be seizing

-7-

Continental's assets. *№ 65 at* ¶ *37; № 68 at 6.* Bradbury says he was unaware the company was to be sold until the last minute. *№ 68 at 5–6; № 50-20 at pp. 207–09.* The sale was, according to Bradbury, part of a larger asset-protection plan to reduce the Harveys' personal liability and avoid debts as Continental started to crumble. *№ 53 at 7–8; № 65 at* ¶ 36. Bradbury says that, as part of the plan and before the sale, Bonnie Harvey and Jones had moved significant assets away from Continental and made preferential payments to the Harveys' other companies. *Ibid.* Bradbury emphasizes that Continental's cash-flow difficulties also resulted from equipment-related embezzlement by his predecessor and a lawsuit involving a truck accident — problems Bradbury had to solve, and did solve, but which ended up costing more than eleven million dollars. *№ 50-20 at pp. 175–77.*

In August 2011, the IRS assessed a penalty against Bradbury for Arkansas Trucking's unpaid employment taxes for the third quarter of 2008. *№ 76 at* ¶ 217. In April 2012, and apparently at the direction of the Department of Justice, the IRS made a proposed assessment for these taxes against Bonnie Harvey and Marvin Jones. *№ 65 at* ¶ 45. But the Service eventually issued a clearance letter and made no assessment against either

Harvey or Jones. *Ibid.* The IRS also assessed the penalty against one of Continental's CFOs, Rick Acklin, and named him in this case; Acklin has been dismissed by agreement. № *84.*

**3. Responsible-Person Status**. Is Bradbury personally liable for Arkansas Trucking's unpaid employment taxes for the third quarter of 2008? It depends on whether he was responsible for paying over the taxes to the government and willfully failed to do so. 26 U.S.C. § 6672. Bradbury was a "responsible person" if he "ha[d] the status, duty[,] and authority to avoid the corporation's default in collection or payment of the taxes." *Ferguson v. United States,* 484 F.3d 1068, 1072 (8th Cir. 2007). Considering all the facts about July, August, and September 2008, the record shows that Bradbury was a responsible person. Arkansas Trucking and Continental were so intertwined that Bradbury's authority at one overlapped with his authority at the other.

When evaluating responsible-person status, courts often look to a list of criteria. *Oppliger v. United States,* 637 F.3d 889, 893 (8th Cir. 2011). Bradbury satisfies most of them. He served as Continental's president and on its board of directors. № *76 at* ¶¶ 1-2. He managed day-to-day operations and possessed the authority to hire or fire employees. № *76 at* ¶¶ 39-40. He had

check-signing authority at accounts belonging to both Continental and Arkansas Trucking and used it regularly. № *76 at* ¶¶ *29, 32, 152; № 50-20 at p. 46.* He evaluated checks' validity before signing them. *№ 50-20 at p. 116.* He would, for instance, look to see how much the checks were for and to whom they were made out; if a check seemed "funny," or "improper," he would seek an explanation. *№ 50-20 at p. 117–19.* He also could and did authorize payments from Continental and Arkansas Trucking accounts.

*№ 76 at* ¶¶ *30, 33–34; № 50-19 at p.70.* During the third quarter of 2008, Bradbury approved payments to other creditors. For instance, he signed Arkansas Trucking checks paying state employment taxes. *№ 76 at* ¶ *128.* He also signed Arkansas Trucking checks paying both truck drivers and office employees. *№ 76 at* ¶ *150, 152.* Bradbury reviewed Continental's expenses and questioned Continental's CFO when he wanted to know what an expense was for and why it had been approved. *№ 76 at* ¶ *68–69.* All of these undisputed facts indicate that, notwithstanding his contention that real power had passed from his hands to Bonnie Harvey and Marvin Jones, Bradbury possessed more than mere check-signing authority during the third quarter of 2008. *№ 53 at 6–7.*

-10-

In addition to corporate status, Bradbury must have had "significant, though not exclusive, authority in . . . matters related to federal tax payments." *Kenagy v. United States*, 942 F.2d 459, 464 (8th Cir. 1991). He did. Bradbury could require his staff to report to him when federal employment taxes became due. № 76 at ¶¶ 98, 141. He had the authority to ensure federal employment taxes were paid before any other creditor. № 76 at ¶¶ 184, 213. When Arkansas Trucking failed to meet its employment tax obligations in July 2008, the revenue officer spoke to Bradbury. № 76 at ¶ 131–32. Bradbury instructed his staff to pay the debt, and it was paid by the deadline. № 76 at ¶¶ 133–36. Bradbury didn't tell Jones or the Harveys about this $25,000.00 payment, and he didn't seek their approval to make it. № 50-19 at p. 91. When Bradbury found out about unpaid federal employment tax deposits in early September, he ordered his staff to inform him of all future deposits. № 76 at ¶¶ 185, 190–91. He also directed them to get the taxes paid before the November deadline. № 50-19 at p. 70. Construing these facts in the light most favorable to Bradbury, no reasonable juror could conclude that Bradbury lacked significant tax-paying authority.

Bradbury argues that his corporate status and tax-paying authority were overshadowed by Bonnie Harvey's and Jones's eventual complete control over the financial affairs of Continental and Arkansas Trucking. *№ 53 at 7; № 65 at ¶ 32.* According to Bradbury, in July, August, and September 2008, Harvey and Jones implemented a plan to avoid debts and claims from creditors by taking these steps:

- transferring all of Ed Harvey's assets to Bonnie Harvey, *№ 65 at ¶ 36;*

- making the decision to sell Continental, knowing that Arkansas Trucking owed federal employments taxes, *№ 65 at ¶ 38;* and

- ignoring Bradbury's repeated requests to pay the delinquent taxes and preventing payment by withholding a promised cash infusion, *№ 53 at 7 & № 65 at ¶ 35.*

Taking the genuinely disputed facts in the light most favorable to Bradbury, the circumstances do not alter Bradbury's responsibility in law to see that the taxes were paid. More than one person may be a responsible person under the statute. *Keller v. United States,* 46 F.3d 851, 854 (8th Cir. 1995). The precedent is harsh but clear: whether difficult circumstances come from above or below, they usually do not change a responsible person's status.

-12-

In *Ferguson*, for example, the CFO/COO argued that the board of directors instructed him not to pay the taxes. But "even if the Board's directive could be construed as an instruction not to pay the taxes, such instructions do not take a person otherwise responsible under section 6672(a) out of that category." 484 F.3d at 1073 (quotation omitted); *see also Greenberg v. United States*, 46 F.3d 239, 243–44 (3rd Cir. 1994)(collecting cases). In other cases, difficulties created by underlings obstructed paying the taxes. *Colosimo v. United States*, 630 F.3d 749, 752–53 (8th Cir. 2011)(corporate president/treasurer duped by bookkeeper); *Oppliger*, 637 F.3d at 891, 893 (embezzling accountant deprived corporate officers of information and opportunity to make informed decisions).

The Third Circuit's decision in *Greenberg* is factually close and illustrates the law's strictness. *See Ferguson*, 484 F.3d at 1073 (relying on *Greenberg*). Greenberg was a controller, who had check-signing authority, but had to get the CEO/board chairman's prior approval for all checks. Their company, like Continental and Arkansas Trucking, encountered financial difficulties. 46 F.3d at 240–41. The controller, like Bradbury, had lots of authority over the business, its employees, and its finances. 46 F.3d at 243–44. The CEO, like

-13-

Jones, had the final say about which creditors got paid and which did not. 46

F.3d at 241, 243. The CEO assured the controller, like Jones and Harvey

assured Bradbury, that the federal taxes due would be paid. 46 F.3d at 241.

The controller, like Bradbury, could have written and sent a check to the IRS

without approval, but it probably would have bounced and he likely would

have been fired. 46 F.3d at 241, 244.

The Court of Appeals held as a matter of law, over a dissent, that the

controller was a responsible person who willfully failed to pay the taxes.

While not binding, the Third Circuit's decision is persuasive. The difficult

financial circumstances and constraining oversight faced by Greenberg were

substantially similar to what Bradbury says he faced during the last days of

Continental/Arkansas Trucking.

As the Court reads the cases as a whole, their principle is this: Unless

the obstructions to paying the taxes were so significant that a reasonable juror

could conclude that a person had essentially been deprived of the authority

making him responsible in the first place, the practical difficulties of making

payment cannot absolve a responsible person of liability. As the dissent in

*Greenberg* emphasized, the core issue is how much authority the allegedly

-14-

responsible person possessed, recognizing that having the ultimate say is not required. 46 F.3d at 245-46; *see also United States v. Bisbee*, 245 F.3d 1001, 1007-08 (8th Cir. 2001). Bradbury's significant financial and tax-related authority in the third quarter of 2008 is established by the undisputed facts of record. Harvey and Jones's actions, taken in the light most favorable to Bradbury, do not create a fact issue about his status. Bradbury continued, notwithstanding the companies' deteriorating finances and tightening oversight by Jones, to run Continental/Arkansas Trucking and to sign checks paying other bills. And the federal taxes were not paid over.

**4. Willfulness.** A responsible person does not have to act with any bad intent or evil motive in order to act willfully within the meaning of § 6672. He acts willfully "whenever he acts or fails to act consciously and voluntarily and with knowledge or intent that as a result of his action or inaction trust funds belonging to the government will not be paid over but will be used for other purposes[.]" *Honey v. United States*, 963 F.2d 1083, 1087 (8th Cir. 1992) (quotation omitted). Or a responsible person may act willfully by proceeding "with a reckless disregard of a known or obvious risk that trust funds may not be remitted to the government." *Ibid*. Willfulness is generally a fact

question. *Colosimo*, 630 F.3d at 753. But "if a responsible person knew of payments to other creditors after he was aware of the failure to pay over withholding taxes to the government, his actions are willful as a matter of law." *Ibid.* Here again, the precedent strongly favors the United States. Bradbury must offer proof of a negative—that he did *not* willfully fail to pay the employment taxes. *Olsen v. United States*, 952 F.2d 236, 239 (8th Cir. 1991).

Construing the facts in the light most favorable to Bradbury, no jury question exists. Bradbury says he took reasonable measures to ensure that the taxes were paid and made repeated requests and attempts to pay the taxes. *№ 53 at 8–10; № 62-1 at 8; № 65 at ¶ 35.* He says he ordered his staff to pay the unpaid taxes before paying other creditors. *№ 65 at ¶ 35; see also № 50-19 at p. 70.* He says his efforts were obstructed by Bonnie Harvey and Jones, who effectively prevented payment. *№ 65 at ¶ 35.* Bradbury disputes that he approved the checks that paid other creditors during the third quarter. *№ 76 at ¶¶ 149, 151, 153, 206, 208.* But the record is clear that Bradbury knew two essential facts in September: the taxes were delinquent; and other creditors were getting paid nonetheless. *№ 50-19 at pp. 84–90.*

-16-

First, some history. Bradbury was aware as early as February 2008 that Arkansas Trucking had not made its federal tax deposits. № 76 at ¶¶ 85–89. Bradbury says he assumed this delinquency got sorted out because he "never heard anything else about it." № 50-20 at p. 237.

Second, there were the events in the summer months. On 14 July 2008, Bradbury signed checks to pay state employment taxes out of Arkansas Trucking's operating account. № 50-4 at 17; № 50-20 at p. 70. A few days later, the IRS contacted Bradbury about additional unpaid federal tax deposits. № 76 at ¶¶ 131–32; № 50-20 at p. 260. Bradbury got the $25,000.00 demanded paid by 21 July 2008. № 50-19 at p. 75. On 25 July 2008, Bradbury signed checks from Arkansas Trucking's account to pay office employees. № 76 at ¶ 152. He says he knew Arkansas Trucking and Continental were "cash tight," but believed after the $25,000.00 payment that the companies were "current at that time[]" on the federal withholding. № 50-19 at pp. 72–75. On 15 August 2008, Bradbury signed checks to pay state employment taxes out of Arkansas Trucking's operating account. № 50-4 at 18; № 50-20 at p. 71.

If the facts stopped here, the current record, taken in the light most favorable to Bradbury, might present a jury question on willfulness. The

-17-

United States has not established that Bradbury knew in late July or August, when he signed other checks, that the companies' federal withholdings were going unpaid. But the undisputed facts about September provide only one answer.

Third, September. Early in the month, Bradbury's management team informed him of additional unpaid federal tax deposits. № 76 at ¶¶ 185–86. The delinquency was approximately $800,000.00. № 50-19 at p. 78; № 50-20 at p. 275. Bradbury ordered payment and informed Jones and Harvey on 3 September 2008. № 50-19 at p. 70, 78–79. He says he reminded Jones thereafter on a daily basis that the taxes had to be paid by 5 November 2008. № 62-1 at 8; № 50-19 at pp. 95–99. On 15 September 2008, Bradbury signed checks to pay state employment taxes out of Arkansas Trucking's accounts payable account. № 76 at ¶ 128; № 50-4 at 19.

Fourth, there are the events in October and November. Bradbury says he also signed checks on 13 October 2008. № 50-20 at pp. 72–73. When the November deadline passed, he suspected that the federal taxes hadn't been paid, but did nothing else. № 50-19 at p. 97. He says he "didn't feel at all responsible at that time." № 50-19 at p. 105. On 12 November 2008, Bradbury

-18-

says he signed another check. № 50-20 at p. 73. He didn't find out for sure that the taxes hadn't been paid until late November when Continental's CFO approached him about it. № 50-19 at pp. 106–07.

In summary, Bradbury signed checks to other creditors in July, August, and September 2008. He has acknowledged three times under oath that he knew other creditors were getting paid during those months. № 50-19 at pp. 76, 84, 89. He knew when he signed the September check for the Arkansas withholdings that the federal withholdings were delinquent. The history, both before September and after, illuminates the circumstances at Continental and Arkansas Trucking. September, though, is dispositive. Knowing of the substantial unpaid federal obligation, Bradbury signed the check paying the State tax obligation. This September payment predated October 2008, when Bradbury says all checks were subject to Jones's veto. Bradbury's reliance on others' assurances that the federal taxes would be paid eventually, though understandable, cannot overcome his undisputed knowledge that these taxes were delinquent when he signed a check to another creditor. He therefore acted willfully as a matter of law — within the statute's meaning as construed

by binding precedent—in failing to pay over the federal withholding taxes. *E.g., Colosimo*, 630 F.3d at 753.

**5. Amount of the Penalty and Interest**. The United States also seeks summary judgment on the precise amount of the penalty Bradbury owes. № 51 at 18; № 66 at 18–19. He does not respond, though he acknowledges that the assessment was made. № 76 at ¶ 217. This aspect of the motion raises complicated factual issues about the interest currently accruing on the penalty and which payments were applied to liabilities from which quarter. *See № 69 at* ¶¶ 14–19. The record is neither developed nor argued adequately on all of this. This part of the United States' motion is therefore denied without prejudice.

\* \* \*

Bradbury was a responsible person as a matter of law. He also acted willfully as a matter of law in failing to pay over Arkansas Trucking's payroll taxes. The United States' motion for summary judgment on its counterclaim and on Bradbury's complaint, № 49, is mostly granted and denied without prejudice on the precise amount of the penalty. Because the United States is entitled to judgment based on the material facts, both undisputed and taken

in Bradbury's favor where disputes exist, Bradbury's motion for summary judgment, № 52, is denied.  His claim for a refund and abatement of the penalty fails as a matter of law.  The Court would appreciate a stipulation, or a renewed motion targeted solely at all the numbers, by 25 April 2014.  Motion in limine, № 70, denied as moot.

So Ordered.

_D.P. Marshall Jr._
United States District Judge

_24 March 2014_

-21-